UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTUITIVE SURGICAL, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ILLINOIS UNION INSURANCE<br>COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-04834-JST<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 13, 16 |

Plaintiff Intuitive Surgical, Inc. ("Intuitive") brings this action for breach of contract and breach of the implied covenant of good faith and fair dealing ("bad faith") against defendant Illinois Union Insurance Company ("Illinois Union") and defendant Navigators Specialty Insurance Company ("Navigators," together with Illinois Union, the "Defendants").  Intuitive alleges that Defendants failed to indemnify Intuitive for insured losses incurred in the defense and settlement of certain products liability claims brought against Intuitive in connection with its *da Vinci*® Surgical System product.  ECF[1] No. 1 ¶ 1.

Before the Court are Navigators' and Illinois Union's Motions to Dismiss the Complaint.  ECF Nos. 13, 16.  For the reasons set forth below, the Court will grant in part and deny in part Navigators' motion to dismiss, and deny Illinois Union's motion to dismiss.

# I.    BACKGROUND

On October 20, 2015, Intuitive filed this breach of contract action against Illinois Union and Navigators in connection with two Illinois Union insurance policies (the "Illinois Union Policies") and one Navigators insurance policy (the "Navigators Policy").  Id. ¶¶ 2–3.  The Illinois

---

[1] Unless specified otherwise, all citations to ECF docket numbers refer to the ECF docket for the instant case, Intuitive Surgical, Inc. v. Ill. Union Ins. Co., No. 15-cv-4834-JST (N.D. Cal. Oct. 20, 2015) (the "breach of contract action").

1    Union Polices provide Intuitive with $15 million in products liability insurance coverage, subject

2    to a $5 million limit for each occurrence and a $5 million aggregate self-insured retention for

3    claims made between March 1, 2013 through March 1, 2014 (the "Policy Period"). Id. ¶ 2.  The

4    Navigators Policy provides Intuitive with $10 million in excess products liability insurance

5    coverage for claims made during the Policy Period.  Id. ¶ 3.

6         Intuitive alleges that it "has incurred Damages and Defense Costs . . . in connection with

7    products liability claims that are covered by the Illinois Union Policies and the Navigators Policy"

8    and that "[t]hese losses exceed both the self-insured retention in the Illinois Union Policies and the

9    limits of the Illinois Union Policies."  Id. ¶ 27.  "Intuitive notified Illinois Union and Navigators of

10   the claims," but "Illinois Union and Navigators have denied that they are obligated to indemnify

11   Intuitive and have sought to rescind their respective policies."  Id. ¶¶ 29, 31.

12        Illinois Union sought to rescind the Illinois Union Policies by filing a claim for rescission

13   of the policies on October 21, 2013.  In that action, Illinois Union asserted that Intuitive concealed

14   from it the existence of tolling agreements between Intuitive and claimants.  Illinois Union

15   Insurance Co. v. Intuitive Surgical, Inc., No. 13-cv-4863-JST, ECF No. 1 ¶ 27 (Oct. 21, 2013)

16   ("Illinois Union Rescission Action").  Illinois Union alleged that had it "known of the tolling

17   agreements and increasing number of claimants being added to the tolling agreements during the

18   application and underwriting process for [the Illinois Union Policies], [Illinois Union] would not

19   have quoted or agreed to issue [the Illinois Union Policies] or would have issued the policy on

20   materially different terms."  Id. ¶ 24.

21        Similarly, Navigators sought to rescind the Navigators Policy by filing a claim for

22   rescission of the policy on December 16, 2013.  Navigators likewise asserted that Intuitive

23   concealed from it the existence of tolling agreements between Intuitive and claimants.  Navigators

24   Specialty Insurance Co. v. Intuitive Surgical, Inc., No. 13-cv-5801-JST, ECF No. 1 ¶ 28 (Dec. 16,

25   2013) ("Navigators Rescission Action").  Navigators alleged that had it "known during the

26   application and underwriting process for the [Navigators Policy] of the existence of [the tolling

27   agreements] and other information documenting the existence of undisclosed claims and

28   increasing number of claimants being added to the tolling agreements, [Navigators] never would

have issued the policy." Id. ¶ 25.

On January 3, 2014, the Court related the Illinois Union and Navigators rescission actions. Illinois Union Rescission Action, ECF No. 20. On April 23, 2014, the Court consolidated the Illinois Union and Navigators rescission actions for all purposes other than trial. Illinois Union Rescission Action, ECF No. 34. On October 29, 2015, the Court related Intuitive's breach of contract action to the rescission actions. ECF No. 6.

In addition to its breach of contract claim, Intuitive's complaint in the instant action also includes a bad faith claim, which is principally premised on its allegation that discovery in the rescission actions "has confirmed that Illinois Union knew of the tolling agreements before it issued the April 29, 2013 Illinois Union Policy and before it accepted Intuitive's premium payment." ECF No. 1 ¶ 25.

On December 18, 2015, Navigators filed a Motion to Dismiss the Complaint. ECF No. 13. On December 21, 2015, Illinois Union filed a Motion to Dismiss the Complaint. ECF No. 16. The Court now considers these motions.

## II.      JURISDICTION

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Intuitive and defendants are citizens of different states, and the amount in controversy exceeds $75,000. ECF No. 1 ¶¶ 5–8.

## III.     LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving

United States District Court
Northern District of California

3

party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533–34 (9th Cir. 1984).  "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

## IV.     DISCUSSION

Navigators moves the Court to dismiss Intuitive's breach of contract and bad faith claims, as well as Intuitive's claim for punitive damages.  Illinois Union does not move the Court to dismiss Intuitive's breach of contract claim, but does seek dismissal of Intuitive's bad faith claim, as well as Intuitive's request for punitive damages.  The Court will first address Navigator's motion with respect to Intuitive's breach of contract claim before addressing both parties' motions regarding bad faith and punitive damages.

### A.     Breach of Contract

The elements of a cause of action for breach of contract under California law[2] are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  Navigators argues that Intuitive has not sufficiently pleaded a breach of the Navigators Policy because "(1) there are no allegations [in the Complaint] that the underlying primary policy [i.e., the Illinois Union Policies] has been exhausted pursuant to the provisions of the Navigators Policy, and (2) there are no allegations that Intuitive's losses even constitute covered or potentially covered claims under the Navigators Policy." ECF No. 13 at 9. The Court addresses both of these arguments in turn.

First, while "under California law, it is clear that [a]ll primary insurance must be exhausted before liability attaches under a secondary policy," Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1504 (9th Cir. 1994), Intuitive has alleged that it has "incurred Damages and Defense Costs

---

[2] The parties do not dispute that California law governs the underlying insurance policies.  See ECF No. 13 at 8; ECF No. 21 at 5–7.

United States District Court
Northern District of California

1  [that] exceed both the self-insured retention in the Illinois Union Policies and the limits of the

2  Illinois Union Policies."  ECF No. 1 ¶ 27; see also id. ¶ 32 ("Intuitive's total losses in connection

3  with the claims noticed under the Illinois Union Policies and the Navigators Policy exceed the

4  self-insured retention and the limits of the Illinois Union Policies.").  As a result, Intuitive has

5  alleged that the primary insurance policy at issue here, the Illinois Union Policies, has been

6  exhausted and that Navigators breached its contractual obligations to Intuitive "by failing to

7  indemnify and defend Intuitive as required by the terms of . . . the Navigators Policy."  Id. ¶ 33.

8  Navigators argues that Intuitive's "alleging 'incurred' losses is a far cry from alleging that

9  the underlying limits have been exhausted by payment of covered judgment and settlements."

10 ECF No. 28 at 3.  According to Navigators, exhaustion under the Navigators Policy requires actual

11 "payment of judgments or settlements" by the insured or the primary insurer.  ECF No. 13 at 6.

12 Because "incur" means "[t]o suffer or bring on oneself a liability or expense," Navigators argues

13 that Intuitive's use of "incur" in the Complaint "does not suggest that Intuitive *paid* those losses,

14 much less that such payments satisfied the exhaustion requirements of the Navigators Policy."

15 ECF No. 28 at 3 (citing Black's Law Dictionary (8th ed. 2004)) (emphasis in original).

16 This argument is unpersuasive.  While the definition Intuitive attaches to its use of the

17 word "incur" might not be the one that appears in Black's Law Dictionary, neither is it totally

18 outside the word's accepted use, either generally or within the law.  Because the Court must

19 "construe the pleadings in the light most favorable to the nonmoving party," Knievel, 393 F.3d at

20 1072, the Court concludes that Intuitive has sufficiently pleaded that the Illinois Union Policies

21 have been exhausted and that Navigators' refusal to indemnify thus constitutes a breach of

22 contract.

23 Second, Navigators argues that "Intuitive has failed to plead that its losses were covered or

24 even potentially covered under the primary and excess policies."  ECF No. 13 at 12–13.  In

25 particular, Navigators argues that the Complaint does not allege whether "the loss [was] caused by

26 an occurrence that takes place in the coverage territory," whether the loss and claims occurred

27 during the Policy Period, and whether the Illinois Union Policies applied to the loss, all of which

28 are required by the Navigators Policy.  ECF No. 13 at 12.  However, the Complaint alleges that

United States District Court
Northern District of California

5

1  "Intuitive has incurred Damages and Defense Costs (as defined by the Illinois Union Policies and

2  Navigators Policy, and hereinafter 'losses') in connection with products liability claims that are

3  *covered* by the Illinois Union Policies and the Navigators Policy."  ECF No. 1 ¶ 27 (emphasis

4  added); <u>see</u> also <u>id.</u> ¶ 1 ("[Intuitive] brings this action for breach of contract and bad faith against

5  [Illinois Union and Navigators] based on their failure to indemnify Intuitive for *insured* losses

6  incurred in the defense and settlement of certain products liability claims brought against Intuitive

7  in connection with its *da Vinci*® Surgical System product.") (emphasis added).  Navigators cites

8  no authority for the proposition that greater specificity is required for an insured to survive a

9  motion to dismiss a breach of contract claim.  Accordingly, the Court denies Navigators' motion

10  to dismiss Intuitive's breach of contract claim.

### B.    Implied Covenant of Good Faith and Fair Dealing ("Bad Faith")

12  To establish a breach of the implied covenant of good faith and fair dealing, Intuitive must

13  plead at least (1) that benefits due under the insurance policies have been withheld and (2) the

14  reason for withholding the benefits was "unreasonable."  <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d

15  1136, 1151 (1990).  Both Illinois Union and Navigators argue that Intuitive's bad faith claim

16  should be dismissed because the Complaint fails to sufficiently allege that defendants acted

17  unreasonably in denying coverage.  ECF No. 13 at 13–14; ECF No. 16 at 11–12.

18  Contrary to Illinois Union's argument, however, Intuitive's complaint alleges that Illinois

19  Union "violated the Implied Covenant [of Good Faith and Fair Dealing] by wrongfully and

20  unreasonably delaying and denying coverage" because "Illinois Union knew of the tolling

21  agreements before it issued the April 29, 2013 Illinois Union Policy and before it accepted

22  Intuitive's premium payment."  ECF No. 1 ¶¶ 25, 37.  That is, the Complaint alleges that Illinois

23  Union had knowledge of the same tolling agreements that Illinois Union claimed were withheld

24  from it by Intuitive and which formed the basis of Illinois Union's rescission action.  <u>See</u> <u>Illinois</u>

25  <u>Union Rescission Action</u>, ECF No. 1 ¶ 27 ("Based on [Intuitive's] concealment of the existence of

26  the tolling agreements . . ., [Illinois Union] is entitled to judicial rescission of the [Illinois Union

27  Policies].").  If Illinois Union knew of the tolling agreements prior to issuing the insurance

28  policies to Intuitive, then, according to Intuitive, it would be unreasonable for Illinois Union to

United States District Court
Northern District of California

later use the existence of those very same tolling agreements to deny coverage and as a basis to rescind Intuitive's insurance coverage.  ECF No. 23 at 7; see also Northland Cas. Co. v. Wescal Yachts, Inc., 60 F. Supp. 2d 1027, 1028 (C.D. Cal. 1999) ("California law allows defendants in an action for rescission to file a counterclaim for breach of the implied covenant where there is no valid ground for the [rescission]."). The Court concludes Intuitive's allegations regarding Illinois Union's knowledge of the tolling agreements is sufficient to plead a claim for bad faith. Accordingly, Illinois Union's motion to dismiss Intuitive's bad faith claim is denied.

But Intuitive makes no such allegation regarding Navigators' knowledge of the tolling agreements.  See ECF No. 1 at ¶ 25.  Instead, Intuitive argues "[t]he fact that the primary carrier, Illinois Union, issued the policy with knowledge of the tolling agreements supports the inference that Navigators, as the excess carrier on the same risk, did not have valid grounds for rescission because the alleged omission of the tolling agreements from the insurance applications was not material to underwriting." ECF No. 21 at 9. While the Court must "construe the pleadings in the light most favorable to [Intuitive]," Knievel, 393 F.3d at 1072, Intuitive has failed to allege any facts regarding Navigators' knowledge of the tolling agreements prior to its agreeing to the Navigators Policy with Intuitive.  The Court thus concludes that the Intuitive's suggested inference in unwarranted and will therefore grant Navigators' motion to dismiss Intuitive's bad faith claim.

### C. Punitive Damages

"Punitive damages for breach of the covenant of good faith and fair dealing are available in insurance cases because of the special relationship between the insurer and the insured." Her v. State Farm Ins. Co., 92 F. Supp. 3d 957, 976 (E.D. Cal. 2015) (citing Jonathan Neil & Assocs., Inc. v. Jones, 33 Cal. 4th 917, 937 (2004)).  California Civil Code section 3294(a) provides:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

"However, 'without a bad faith claim, there can be no punitive damages claim.'" Her, 92 F. Supp. 3d at 957 (quoting Helus v. Equitable Life Assur. Soc'y of the U.S., 309 F. Supp. 2d 1170, 1185

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (N.D. Cal. 2004)).  Because the Court has already dismissed Intuitive's bad faith claim against

2    Navigators, Intuitive's claim for punitive damages against Navigators must also be dismissed.

3           As to Intuitive's claim for punitive damages against Illinois Union, Illinois Union argues

4    that this claim should be dismissed because "Intuitive has failed to allege any facts demonstrating

5    the requisite intent."  ECF No. 13 at 15.  Intuitive responds that "[t]he unreasonable delay or

6    denial of insurance benefits based on an unreasonable rescission claim can support an award of

7    punitive damages under California Civil Code Section 3294 because an insurer's attempt to

8    rescind a policy without valid grounds amounts to a 'conscious disregard' for the policy holder's

9    rights."  ECF No. 21 at 10 (citing Gentry v. State Farm Mut. Auto. Ins. Co., 726 F. Supp. 2d 1160,

10   1172 (E.D. Cal. 2010)).

11          While the parties disagree as to the correct standard applied at the pleading stage to

12   determine whether a plaintiff has sufficiently pleaded a claim for punitive damages, the Court

13   need not resolve this issue because the Court determines that Intuitive has sufficiently pleaded a

14   claim for punitive damages under any of the proposed standards.  To be liable for punitive

15   damages, California Civil Code section 3294(a) requires a defendant to have acted with

16   "oppression, fraud, or malice."  Bem v. Stryker, No. 15-cv-2485-MMC, 2015 WL 4573204, at *2

17   (N.D. Cal. July 29, 2015).  "Malice" is defined as "conduct which is intended by the defendant to

18   cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a

19   willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).[3]

20   Here, Intuitive alleges that "Illinois Union knew of the tolling agreements before it issued the

21   April 29, 2013 Illinois Union Policy," despite the fact that Illinois Union subsequently sought to

22   rescind this insurance policy "alleg[ing] that Intuitive failed to disclose in its applications for

23   insurance that it had entered tolling agreements with claimants . . . ."  ECF No. 1 ¶¶ 24–25.  The

24   alleged conduct—seeking judicial rescission of an insurance policy based on an insured's alleged

25

26   [3] "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust
     hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  "Fraud" is
27   defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to
     the defendant with the intention on the part of the defendant of thereby depriving a person of
28   property or legal rights or otherwise causing injury."  Cal. Civ. Code § 3294(c)(3).

concealment of certain information despite the insurer's having knowledge of the same information prior to the issuance of the insurance policy—would constitute "despicable conduct . . . carried on by the defendant with a willful and conscious disregard of" Intuitive's right to recover under the Illinois Union Policies.  Cal. Civ. Code § 3294(c)(1).  Accordingly, the Court denies Illinois Union's motion to dismiss Intuitive's punitive damages claim.

## CONCLUSION

For the reasons stated above, Illinois Union's motion to dismiss Intuitive's claims for bad faith and punitive damages is denied.  Navigators' motion to dismiss Intuitive's breach of contract claim is likewise denied.  Navigator's motion to dismiss Intuitive's bad faith and punitive damages claims is granted with leave to amend.  Should Intuitive intend to file an amended complaint, Intuitive shall do so within 30 days of the date of this order.

IT IS SO ORDERED.

Dated:  April 14, 2016

_____
JON S. TIGAR
United States District Judge